Ernest J. Franceschi, Jr. (State Bar No. 112893)
FRANCESCHI LAW CORPORATION
4640 Admiralty Way, 5th Floor
Marina del Rey, California 90292
Telephone: (213) 622-0835
Facsimile: (213) 622-0837
Email: ejf@franceschilaw.com

Attorneys for Plaintiffs
HAWTHORNE HANGER OPERATIONS, L.P.
and DAN WOLFE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HAWTHORNE HANGAR OPERATIONS, L.P. a California limited partnership; DAN WOLFE an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>HAWTHORNE AIRPORT, LLC., a Delaware limited liability company; ADVANCED AIR, LLC., a California limited liability company; DAVID WEHRLY, an individual; LEVI STOCKTON, an individual, The CITY OF HAWTHORNE, a municipal corporation.<br><br>Defendants. | **CASE NO.**<br><br>COMPLAINT FOR:<br><br>1) VIOLATION OF 15 USC § 1, conspiracy to restrain intestate commerce;<br><br>2) VIOLATION OF 15 USC § 2, unlawful attempt to monopolize interstate commerce;<br><br>3) DECLARATORY RELIEF THAT RESTRICTIVE COVENANTS ARE VOID PURSUANT TO CALIFORNIA *Business & Professions Code* §16600;<br><br>4) NUISANCE ABATEMENT California *Code of Civil Procedure* section 731<br><br>DEMAND FOR TRIAL BY JURY |

COME NOW Plaintiffs HAWTHORNE HANGAR OPERATIONS, L.P. and DAN WOLFE and for cause of action against Defendants, and each of them, complain and alleges as follows:

**JURISDICTION AND VENUE**

1. This action is brought pursuant to sections 1 and 2 of Title 15 of the United States Code, The Sherman Antitrust Act. This honorable Court has federal question subject matter jurisdiction pursuant to 16 U.S.C. section 4, 28 U.S.C. Section 1332, and 28 U.S.C. Section 2201 over the first and second claims for relief. The third and fourth claims for declaratory relief and nuisance abatement are state law claims for which 28 U.S.C. section 1367(a) provides supplemental jurisdiction

2. Venue is proper in the Central District of California because the operative events upon which this action is based occurred therein and each of the Defendants maintains offices and an official presence therein. 28 U.S.C. Section 1391(b) and ( c).

**THE PARTIES**

3. At all times mentioned herein, Plaintiff HAWTHORNE HANGAR OPERATIONS, L.P. (hereinafter HHO) was and now is a California limited partnership.

4. That at all times mentioned herein, Plaintiff DAN WOLFE (hereinafter Wolfe) was and now is an individual residing in the State of California in the County of Los Angeles.

5. Defendant HAWTHORNE AIRPORT, LLC., (hereinafter HA) was and now is a Delaware limited liability company with its principal place of business in the State of California, County of Los Angeles.

6. That at all times mentioned herein, Defendant ADVANCED AIR , LLC. (hereinafter AA) was and now is a California limited liability company with its principal place of business in the State of California, County of Los Angeles.

7 Defendant DAVID WEHRLY (hereinafter Wehrly) was and now is an individual residing in the State of California, County of Los Angeles and at all relevant times was the controlling principal of HAWTHORNE AIRPORT, LLC. and ADVANCED AIR, LLC.

8. Defendant LEVI STOCKTON (hereinafter Stockton) was and now is an individual residing in the State of California, County of Los Angeles. Plaintiffs are informed and believe that LEVI STOCKTON at all relevant times was and is an equity owner of HAWTHORNE AIRPORT, LLC. and ADVANCED AIR, LLC. as well as a principal.

9. Defendant CITY OF HAWTHORNE (hereinafter The City) is a municipal corporation organized and existing under the laws of the State of California. The City is named herein as a nominal defendant for purposes of being bound by the judgment on the requested relief that the master ground lease options for sections 3, 8 , and 10 between the City, and HA be declared void.

**NATURE OF THE ACTION**

10. Wehrly, HA, AA, and Stockton have conspired among themselves to restrain interstate commerce at the Hawthorne Municipal Airport. With the complicity of the City, they have acquired a defacto monopoly over all ground leases and aviation services at the airport, and have the ability to exclude any competition. The defendants have attempted to prevent Plaintiffs from engaging in competing fuel sales at the airport. Additionally, the City has refused to lease to Plaintiffs an unutilized or underutilized parcel of the airport adjacent to Plaintiffs' FBO that would allow Plaintiffs to expand their operations and offer enhanced services to the flying public, because it is subject to an exclusive master ground lease that it granted to HA.

11. The purpose of this action is to break up the monopoly enjoyed by Wehrly, HA, AA, and Stockton as to the master ground lease and to enjoin them from engaging in further restraint of commerce at the airport for the benefit of Plaintiffs as well as the general public. Plaintiffs also seek damages for their individualized harm caused by Defendants' actions.

**STATEMENT OF FACTS APPLICABLE TO ALL CLAIMS**

12. The Hawthorne Municipal Airport, also known as Jack Northrop Field, FAA identifier KHHR is a general aviation public use airport that was built by the City in 1939 as part of a deal to entice Jack Northrop to build his aviation factory adjacent to the airport. This iconic location that was once the Northrop Grumman headquarters is at the center of this action.

13. The airport is now and has always been owned by the City. However, HA, AA, Wehrly, and Stockton have obtained a monopoly over every service rendered to the consuming public at the airport, and control virtually all aspects of the airports operations, with the exception of aircraft movement and air traffic control functions that are within the exclusive province of the FAA.

14. The airport is subdivided into eleven separate sections numbered 1 through 11. In or about 2005 the City of Hawthorne entered into a master ground lease agreement with Defendant Hawthorne Airport, LLC. for thirty-five years with two separate five year renewal options for sections 1, 2, 4, 5, 6, 7, 9 and 11. HA was also given an option to lease the remaining sections, 3, 8, and 10. On October 25, 2007 HA exercised the option to lease sections 3, 8, and 10 and has therefore acquired from the City a constructive exclusive right over the entire aircraft non movement area of the airport. Non movement areas are those portions of the airport that are not under the control of the FAA tower, such as runways and taxiways.

15. This master Ground Lease and subsequent options were entered into in violation of 49 U.S. C. Section 40103 (e) and FAA policy which prohibits an airport sponsor (the City) from granting options or preferences on future airport lease sites to a single service provider, which may be construed as intent to grant an exclusive right. HA, since exercising the option to lease sections 3, 8, and 10 has not used or has underutilized section 8 and has possessed sections 3, 8, and 10 rent free from the City. The constructive exclusive right given to HA was completed when HA was

allowed to lease sections 3, 8, and 10 in violation of Grant Assurances 5, 22, 23, 24 and 25. A grant assurance is an obligation that an airport sponsor enters into when it accepts FAA administered financial assistance. *Exhibit* 1 is a true and correct copy of the "Ground Lease" granted to HA. Plaintiffs allege that Defendant HA to this day has not used or has underused many sections of the airport, including, but not limited to section 8 and are simply occupying these sections to maintain exclusive control over the airport.

16. Since obtaining the Ground Lease, Defendant HA in conjunction with AA have operated as a fixed base operator (FBO) complete with a terminal, offices, a restaurant, on demand charter services, and fuel dispensing facilities. By being the master lease holder, HA, Wehrly, and Stockton are able to exclude from the airport any business seeking to compete with the services they and AA provide. HA and AA are owned and controlled by Wehrly and Stockton. Because they have such plenary control over the airport, Defendants actually believe and have represented to others that they "own the airport." At a deposition given by Wehrly in a prior litigation he was asked the following question and gave the following answer:

"Q. Do you presently hold any interest, either a leaseholder or ownership interest, at Hawthorne Airport?

A. I am involved in entities that have ownership of the airport."

17. Between 2005 and 2017, HA and AA operated the only FBO at the airport and were the exclusive fuel provider. In 2009 Plaintiff Hawthorne Hangar Operations, L.P. (then co-owned by Wolfe and Wehrly) were granted a Through-The-Fence Agreement and in 2017 a fuel concession at the airport was granted by the City of Hawthorne following a series of transactions in which Wolfe and Wehrly jointly purchased the former Northrop headquarters property adjacent to the airport, which had underground fuel tanks as well as a large hangar. Although the HHO parcel is actually not on the airport property, but adjacent thereto, the Through-The-

Fence Agreement allows it to function as if it actually is on the airport. This is the only airport property that is not owned by the City of Hawthorne or is subject to HA's master lease.

18. In 2009, Plaintiff Wolfe who is in the business of aviation cinematography was looking for a hangar where he could consolidate his aircraft used in aerial filming. Defendant Wehrly became aware of the fact that Wolfe was looking for a hangar and connected with Wolfe via Stockton. Wehrly had presented himself as willing to partner with Wolfe to purchase the former headquarters of Northrop Corporation immediately adjacent to the airport. Wehrly's motivation to purchase the Northrop parcel was to control the only remaining airport property that was not owned by the City and not subject to the HA master lease. The Northrop parcel included a large hangar and two existing 15,000 gallon underground fuel tanks that were previously used by Northrop to fuel its aircraft. There is also photographic evidence showing a Chevron fuel sign on the premises, a remnant from the 1990's when Northrop Grumman Aviation, Inc. operated a fueling FBO on the premises as well as an FAR part 135 charter service. Wehrly further sought to preserve his monopoly through the insertion in the Purchase/Sale Agreement restrictive covenants which sought to limit Wolfe's ability to sell fuel to the general public. Wehrly, HA, AA, and Stockton have since sought to enforce these restrictions against Wolfe and HHO. The restrictive covenants are anti competitive and violate 49 U.S. C. Section 40103 (e). They are also void under California *Business & Professions* Code section 16600 as well as Sections 1 and 2 of Title 15 of the United States Code.

19. In August of 2009 Hawthorne Hangar Operations, L.P. was formed as a partnership between Wehrly and Wolfe to purchase the Northrop property from seller MS Kearny Northrop Avenue LLC (hereinafter MS Kearny) for $3.3 million.

20. After the formation of HHO, an initial Purchase and Sale agreement (PSA) for HHO, dated August 12, 2009, *Exhibit* 2 was signed by Wehrly and Wolfe

to purchase the Northrop parcel. The August 2009 PSA did not contain any restrictions against selling fuel to any aircraft. The absence of a fueling restriction was expressly memorialized in a September 3, 2009 letter sent to Wehrly by Wolfe, and which Wehrly executed which provided in pertinent part that Wehrly and Wolfe "agreed to work together to provide rental/office space along with fuel and fuel services for high revenue producing outside tenants" the letter further provided that "included in the purchase price for the facility are two existing underground fuel tanks. The tanks will be utilized to provide fuel to HHO/HHM partners at direct cost...to HHO/HHM tenants at a price that will be determined by the partners...pricing for invitees and visitors to the facility to be determined.." *Exhibit* 3

21. A few days prior to the scheduled closing date on the PSA, one Hoonie Kang, Vice President of MS Kearny who unbeknown to Wolfe, also had an equity interest along with Wehrly in their FBO and fueling operations then known as Million Air, now AA dba Jet Center, came to the premises and informed Wolfe that the agreement had been changed. Kang falsely represented to Wolfe that Northrop was insisting that a fueling restriction be included in the agreement or Northrop would "pull out of the deal." However, the seller was MS Kearny Northrop Ave., LLC., not Northrop. MS Kearny, an entity unrelated to Northrop had purchased the property for resale. Kang had inserted a fueling restriction as section 10.4 to the PSA provides as follows:

> "10.4 Fuel Tanks. Buyer covenants and agrees that Buyer shall not use the fuel tanks located on the Real Property for any purpose other than the fueling and refueling of (I) airplanes, helicopters and other equipment owned or directly managed by Buyer, and (ii) other airplanes, helicopters and other equipment which have been located on and occupied the Real Property for at least thirty (30) days pursuant to the terms and provisions of a written lease. The foregoing

covenant shall survive the Close of Escrow."

22. Wolfe objected to the section 10.4 fueling restriction. However, Kang further falsely represented that Northrop was insisting on 10.4 because Northrop had been subject to a similar fueling restriction when it was operating at the airport. Wolfe told Kang that he did not believe that Northrop was insisting on the fueling restriction and reserved the right to verify that directly with Northrop. However, it was Friday, with escrow scheduled to close the following Monday, making it virtually impossible for Wolfe to verify Kang's representation before the close of escrow. In order to avoid losing the deal, Wolfe executed a revised PSA dated November 12, 2009 containing section 10.4. *Exhibit* 4.

23. After the close of escrow, Wolfe spoke with various Northrop executives who put him in contact with Northrop's real estate attorneys. Northrop's real estate attorneys denied writing section 10.4 and denied that Northrop was subject to fueling restrictions to their knowledge. Wolfe further learned from the CEO of MS Kearny that he too had no knowledge of 10.4. Finally, Wolfe discovered that Hoonie Kang was a co-owner with Wehrly of the Million Air fueling concession on the airport, the immediate predecessor to AA and which was taken over by AA.

24. Concurrently with the close of escrow on November 16, 2009, a Through-The-Fence Agreement (TTF) between HHO and the City of Hawthorne became effective. The TTF permitted all aircraft visiting the airport to access the HHO property and contemplated fuel being sold when the fuel farm became operational, which would require a significant investment of capital by the HHO partners. The TTF is attached hereto as *Exhibit* 5.

25. In 2014 Wolfe sought to buy out Wehrly's partnership interest in HHO primarily because Wehrly refused to proceed with the renovation of the fuel facility. Wehrly agreed to being bought out, but insisted that the section 10.4 fueling restriction in the Northrop PSA be made a part of the buyout agreement. However, in an email by Wehrly to Wolfe on 2/14/2014, Wehrly sought an agreement from

Wolfe that he would not compete with the existing fuel concession granted to HA and AA in any way. Wolfe refused. The insistence on the fueling restriction was intended solely to shield the defendants from competing fuel sales by Plaintiffs. Wolfe refused. The HHO partnership agreement provides for a "shotgun" forced sale where one partner could make an offer and if the other did not accept, then the offeror gets it for that price. No counteroffers are allowed. In order to avoid the "shotgun" forced sale, a compromise was reached where a provision was inserted into the buy out agreement, section 10.2, whereby Wolfe simply acknowledges that 10.4 was part of the Northrop PSA. *Exhibit* 6. At this time Wolfe did not intend for HHO to become a fueling FBO, but was preserving his right to do so in the future and clearly expressed to Wehrly that he was also preserving his right to challenge the fueling restriction, if and when HHO decided to become a fueling FBO.

26. After the 2014 buyout, Wolfe expended $1.2 million to bring the fuel farm operational. Due to the substantial expense that was incurred, Wolfe first considered that he might need to sell fuel to the public in order to recoup the capital investment in the fuel farm.

27. In 2016 HHO applied for a fuel concession agreement (the HHO FCA) from the City of Hawthorne. Between August 2016 and April 2017, while HHO's application for the FCA was pending with the City, Wehrly, AA and HA petitioned the City to deny HHO's requested fuel concession agreement, insisting that HHO could not sell fuel to the public because of the restrictions imposed by section 10.4. They also raised other meritless objections to the FCA. Nevertheless, the City granted HHO the requested FCA. Attached hereto as *Exhibit* 7 is the FCA.

28. Even before the grant of the FCA to HHO, Wehrly, HA, AA, and Stockton conspired among themselves to monopolize fuel sales at the airport and attempt to exclude Plaintiffs. In an email dated April 21, 2014 Wehrly makes the following admission:

"We do not want him (Wolfe) to compete with us in fuel sales.

As long as we are involved in the airport we want restrictions on any party using fuel tanks, especially tanks that are off airport property to facilitate the sale of fuel on the airport."

Following the grant of the FCA, the Wehrly, HA, AA, and Stockton Defendants continued in their conspiracy to restrain competition by pursuing a multifaceted course of conduct that included the filing of litigation, making demands on the City to revoke or restrict HHO's FCA, and even erecting a physical barrier intended to obstruct and hinder HHO's fueling operations, all of which were calculated to monopolize fuel sales at the airport by hindering Plaintiffs from operating their competing fuel concession. On July 18, 2017 Levi Stockton sent an email to his co-conspirator Wehrly outlining their strategy on how to deal with Wolfe selling fuel. Stockton wrote:

"I think it can be navigated around (referring to the FCA) We have the agreement HHO he has with the City lean on but I think regardless what is written if they want to sell fuel they will and the FAA has rules to not limit airport to one fuel provider.

I think we can raise hell with the FAA and city and put some real push back on flow fee and rights to the airport if they try to sell fuel. Plus sic Malek on them on to the security of the hangar ect.[sic]"

"...I think we make it hard for them if they want to sell to public."

29. Wehrly, Stockton, HA and AA have executed on and pursued the agreed upon scheme outlined in Stockton's email. On February 14, 2017 Stockton appeared at the City Council meeting to request the City restrict Plaintiffs' fueling operations to only its own aircraft and tenants. On April 19, 2017 Stockton sent the City a letter claiming that the fueling agreement with HHO wrongfully created an easement

across HA's entire airport leased premises with the intention of preventing aircraft from accessing the HHO ramp for fuel and services. These efforts and claims were rejected by the City on April 20, 2017.

30. Undeterred, HA and AA filed an action for trespass, encroachment, breach of contract, equitable servitude, and declaratory relief against Plaintiffs on April 4, 2017 as part of the "Push Back" campaign against Plaintiffs for competing with HA in selling fuel at the airport. This frivolous lawsuit was voluntarily dismissed by HA one month later on May 10, 2017 without any payment or other consideration being provided to HA or AA.

31. When all of the foregoing efforts failed to prevent Plaintiffs from operating their fuel concession, Stockton sought permission from the City to erect a fence on property that HA controlled immediately adjacent to the HHO fuel farm. The City denied permission for the fence and told Stockton not to build it. However, Stockton did so anyway and the fence remains to this day. The fence was intended to prevent pilots from seeing the fueling facility from aircraft transiting taxiway "S," the principal taxiway at the airport. The fence also presents an obstacle to fueling large aircraft which cannot be maneuvered into position adjacent to the fuel farm because of the obstruction posed by the fence. The fence also posses a material safety hazzard to those working in or about the fuel farm because in the event of a fire, those personnel will be trapped and unable to escape the flames. The fence materially interferes with Plaintiffs' fueling operations and serves to restrain competition. In addition to having been erected in furtherance of the anti-competitive conspiracy, and to attempt to restrain interstate commerce, the fence constitutes a nuisance under California law, which is subject to abetment.

32. On August 6, 2020, counsel for Wehrly sent a letter to the City of Hawthorne and to HHO demanding that HHO cease and desist from selling fuel to the general public due to an interim arbitration award that Wehrly obtained in a contract action, finding that the aforementioned section 10.4 was valid and

enforceable for the purpose of attempting to intimidate the City into revoking HHO's fuel concession in furtherance of the common plan or scheme between HA, AA, Wehrly, and Stockton to restrain competition from HHO. In response, the City by letter dated September 16, 2020 demanded that HHO cease dispensing fuel on airport property and that such fueling must take place only on HHO property, an irrational, unreasonable, and onerous restriction, particularly since HA and AA are allowed to fuel aircraft anywhere on the airport using fuel trucks. This restriction imposed by the City at the behest of Wehrly, Stockton, HA, and AA puts the Plaintiffs at a competitive disadvantage and discriminates against the Plaintiffs in violation of 49 U.S. C. Section 40103 (e) and Grant Assurances 5, 22, 23, 24 and 25. Plaintiffs have refused to comply with the City's illegal directive. HHO should have equal airport access via their TTF and FCA.

33. At Wehrly's deposition in a pending litigation involving some of the same parties pertaining to contract issues, he was asked the following questions and gave the following answers regarding competition for fueling at the airport:

"Q. How do you compete?

A. I define it that he would not be pumping fuel to any airplanes that might ever buy fuel at the airport with the exception of those outlined in 10.4.

Q. So if Mr. Wolfe provided fueling services to aircraft who came to his hangar or this area of the airport, you would consider–and you continue to provide fueling on your end of the airport, would you consider that competing?

A. Yes.

Q. And why so?

A. Do I have to explain that? I mean, he's–he's a competitor pumping fuel into an airplane that could have purchased the fuel from us. If an airplane lands here and needs fuel,

we're a place that they can get it. Any additional people pumping fuel is a competitor.

Q. Are you aware of restrictions placed on the airport by the Federal Government which permit and allow competition at the airport?

A. I am and we're fully supportive of that.

Q. But not Mr. Wolfe?

A. He's not on the airport."

The difference between actually being on the airport premises such as HA and AA, and operating pursuant to a Through-The-Fence agreement such as HHO is a distinction without substance. Both are providing fuel to aircraft using the airport in the course of interstate commerce and both are subject to the requirements of 49 U.S. C. Section 40103 (e). Moreover, all aviation fuel that is dispensed at any airport is brought into the airport from outside sources.

34. On or about January 29, 2019 Wolfe requested a lease from the City for section 8, which is contiguous with the HHO parcel. HA since the inception of their lease option has not developed section 8 and it remains under utilized. Wolfe proposed to develop section 8 to include helipads and hangars, other than a small portion leased by HHO pursuant to the agreement and approved by HA in the tarmac lease to HHO in the TTF signed by Kang. The City denied Wolfe a lease on section 8 because HA already had a lease on that section by reason of the aforementioned unlawful option given to them in violation of the Grant Assurances. As a result, Wolfe has been unable to expand his aviation operations and has been adversely affected by the constructive exclusive right given to HA which violates the Grant Assurances. Wehrly, HA, AA, and Stockton have also attempted to prevent HHO from fueling aircraft on the small tarmac portion of section 8 which HHO leased concurrently with the TTF, which is allowed under section 11.6 ( c) thereof.

**FOR A FIRST CLAIM FOR RELIEF FOR VIOLATION OF 15 U.S.C. SECTION 1 CONSPIRACY TO RESTRAIN INTERSTATE COMMERCE (FUEL SALES) AGAINST DEFENDANTS WEHRLY, STOCKTON, HA, AND AA**

35. Plaintiffs repeat and reallege the contents of paragraphs 1 through 34 as though set for at length herein.

36. That at all times relevant herein, there existed federal legislation, 15 U.S.C. section 1 which provides in pertinent part:

> "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations is declared to be illegal..."

37. Plaintiffs allege that airports and aircraft are instrumentalities of interstate commerce and that services provided at an airport to aircraft, including but not limited to aviation related leases and the dispensing of aviation fuel affect interstate commerce.

38. Plaintiffs allege that the Wehrly, HA, AA, and Stockton defendants by reason of the recited acts hereinabove have conspired to restrain trade or commerce among the several states and have violated 15 U.S.C. section 1 by taking actions calculated to prevent and hinder Plaintiffs in the competing sale of fuel at the airport.

39. 15 U.S.C. section 15(a) provides that:

> "Except as provided in subsection (b), any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including

> a reasonable attorney's fee. The court may award under this section, pursuant to a motion by such person promptly made, simple interest on actual damages for the period beginning on the date of service of such persons's pleading setting forth a claim under the antitrust laws and ending on the date of judgment, or for any shorter period therein, if the court finds that the award of such interest for such period is just in the circumstances."

Plaintiffs are therefore entitled to recover triple damages from Defendants Wehrly, AA, HA, and Stockton as will be shown at time of trial according to proof together with attorney fees incurred in bringing this action. Plaintiffs allege that they are also entitled to injunctive relief prohibiting these defendants from further interference with Plaintiffs' fueling operations pursuant to 15 U.S.C. section 26.

## **FOR A SECOND CLAIM FOR RELIEF FOR VIOLATION OF 15 U.S.C. SECTION 2 FOR UNLAWFUL ATTEMPT TO MONOPOLIZE FUEL SALES AND AIRPORT SERVICES AGAINST ALL DEFENDANTS**

40. Plaintiffs repeat and reallege the contents of paragraphs 1 through 39 as though set for at length herein.

41. That at all times relevant herein, there existed federal legislation, 15 U.S.C. section 2 which prohibits any person from monopolizing or attempting to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce among the several states, or with foreign nations.

42. Plaintiffs allege that airports and aircraft are instrumentalities of interstate commerce and that services provided at an airport to aircraft, including but not limited to aviation related leases and the dispensing of aviation fuel affect interstate commerce.

43 Plaintiffs allege that the Wehrly, HA, AA, and Stockton defendants by reason of the recited acts hereinabove have attempted to restrain trade or commerce

among the several states, have conspired among themselves to do so, and have violated 15 U.S.C. section 2 by taking actions calculated to prevent and hinder Plaintiffs in the competing sale of fuel at the airport.

44. Plaintiffs further allege that the master lease between the City and HA together with the options for sections 3, 8, and 10 grants to HA a defacto monopoly over all airport operations. HA and AA's single service provider monopolistic status discriminates against members of the general public seeking to do business at the airport and thereby restrains interstate trade or commerce in violation of 15 U.S.C. section 2. The master lease options given to HA are also contrary to federal policy as set forth in 49 U.S. C. Section 40103 (e) because the airport has received grant assurances. Plaintiffs are therefore entitled to declaratory and injunctive relief pursuant to 15 U.S.C. section 26 requiring the City to revoke the sections 3, 8, and 10 Ground Lease options granted to HA and award a section 8 lease to Plaintiffs with sections 3 and 10 being either retained by the City or made available to existing subtenants of HA in those sections. Plaintiffs are also informed and believe that HA has not paid rent on sections 3, 8, and 10 since the options were exercised in violation of Grant Assurance 24 which has allowed HA, AA, Wehrly, and Stockton to be unjustly enriched by collecting rent from subtenants, but not paying rent to the City.

45. Pursuant to 15 U.S.C. section 15(a) Plaintiffs are also entitled to recover triple damages from Defendants Wehrly, AA, HA, and Stockton as will be shown at time of trial according to proof together with attorney fees incurred in bringing this action. Plaintiffs allege that they are also entitled to injunctive relief prohibiting these defendants from further attempting to restrain commerce with Plaintiffs' fueling operations pursuant to 15 U.S.C. section 26.

**FOR A THIRD CLAIM FOR DECLARATORY RELIEF THAT SECTION 10.4 IS VOID BY OPERATION OF CALIFORNIA *BUSINESS & PROFESSIONS CODE* SECTION 16600 AGAINST DEFENDANTS WEHRLY, HA, AA, AND STOCKTON**

46. Plaintiffs repeat and reallege the contents of paragraphs 1 through 34 as though set for at length herein.

47. At all times mentioned herein there existed California State law, California *Business & Professions Code* section 16600 which provides as follows:

> "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

48. Wolfe contends that Section 10.2 of the partnership buyout agreement which purports to restrict fuel sales is void as a matter of law by operation of section 16600.

49. Wolfe seeks a determination at this time that section 10.2 is void and unenforceable and cannot serve as an impediment to selling fuel at the airport.

**FOR A FOURTH CLAIM FOR RELIEF FOR NUISANCE ABATEMENT AGAINST DEFENDANTS WEHRLY, HA, AA, AND STOCKTON**

50. Plaintiffs repeat and reallege the contents of paragraphs 1 through 34 as though set for at length herein.

51. California *Civil Code* § 3479 defines what constitutes a "nuisance" as:

> "Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary

manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

52. Plaintiffs allege that the fence erected by defendants serves no legitimate purpose and was intended to obscure Plaintiff's fuel farm, and was built without permits and/or permission from the City and is therefore a nuisance.

53. Plaintiffs are "persons" adversely affected by the nuisance and therefore have standing to seek an order of abatement, damages, and any other appropriate relief such as a permanent injunction directing the Defendants to remove the fence. *Code of Civil Procedure* § 731 is captioned, "Persons entitled to bring abatement suit" and provides as follows:

> "An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as defined in Section 3479 of the Civil Code, and by the judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefor. A civil action may be brought in the name of the people of the State of California to abate a public nuisance, as defined in Section 3480 of the Civil Code, by the district attorney or county counsel of any county in which the nuisance exists, or by the city attorney of any town or city in which the nuisance exists. ..."

54. As a direct and legal result of the nuisance maintained by the Defendants against whom this claim for relief is directed, Plaintiffs have been adversely affected and are entitled to an award of monetary damages as will be stated at time of trial together with an order of abatement and a permanent injunction.

Wherefore, Plaintiffs pray for judgment as follows:

<u>ON THE FIRST CLAIM FOR RELIEF</u>

1. For general damages as will be shown at time of trial;
2. For triple damages pursuant to 15 U.S.C. section 15(a);

3. For injunctive relief prohibiting the further restraint of fueling competition at the airport;

4. For attorney fees as provided by 15 U.S. C. Section 15(a);

5. For cost of suit incurred herein.

ON THE SECOND CLAIM FOR RELIEF

1. For general damages as will be shown at time of trial;

2. For triple damages pursuant to 15 U.S.C. section 15(a);

3. For injunctive relief prohibiting the further restraint of fueling competition at the airport;

4. For declaratory relief declaring that the City's Ground Lease options for sections 3, 8 and 10 given to HA were in violation of 49 U.S. C. Section 40103 (e) and Grant Assurances 5, 22, 23, 24 and 25;

5. For an injunction or other remedial order requiring the City to revoke the Ground lease with HA as to sections 3, 8 and 10 and awarding a section 8 lease to Plaintiffs;

6. For attorney fees as provided by 15 U.S. C. Section 15(a);

7. For cost of suit incurred herein;

ON THE THIRD CLAIM FOR RELIEF

1. For a declaration that Section 10.2 of the partnership buyout agreement which purports to restrict fuel sales is void as a matter of law by operation of section 16600;

2. For cost of suit incurred herein.

ON THE FOURTH CLAIM FOR RELIEF

1. For general damages as will be shown at time of trial according to proof;

2. For an order of abatement requiring Wehrly, HA, AA, and Stockton to remove the fence they erected adjacent to Plaintiffs' fueling facility;

3. For costs of suit incurred herein.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs hereby demand a trial by jury in the within case.

Dated: November 24, 2020

**FRANCESCHI LAW CORPORATION**

By /s/Ernest J. Franceschi, Jr.
Ernest J. Franceschi, Jr.
Attorney for Plaintiffs
HAWTHORNE HANGER OPERATIONS, L.P. and DAN WOLFE