UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | March 12, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| K. Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Dismiss filed by Defendant City of Hawthorne (the "City"). (Dkt. No. 34.) Plaintiffs Hawthorne Hangar Operations, L.P. and Dan Wolfe ("Plaintiffs") filed an Opposition (Dkt. No. 39) and the City filed a Reply (Dkt. No. 44). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument.

**I.    Background**

The Hawthorne Municipal Airport (the "airport") is located in the City and owned by the City. (Dkt. No. 1 ("Compl") ¶ 12.) Plaintiffs allege that "[w]ith the complicity of the City," defendants Wehrly, Hawthorne Airport LLC, Advanced Air LLC, and Stockton have "acquired a defacto monopoly over all ground leases and aviation services at the airport, and have the ability to exclude any competition." (Dkt. No. 1 ("Compl.") ¶ 10.) According to Plaintiffs, "[t]he defendants have attempted to prevent Plaintiffs from engaging in competing fuel sales at the airport." (Id.)

The airport is divided into eleven separate lots. (Id. ¶ 14.) In January of 2005, the City entered into a master ground lease with defendant Hawthorne Airport LLC for sections 1, 2, 4, 5, 6, 7, 9, and 11 of the airport (the "Master Ground Lease"). (Id.) The Master Ground Lease also provided defendant Hawthorne Airport LLC with the option to lease the remaining sections 3, 8, and 10 of the airport. (Id.) In October of 2007, Hawthorn Airport LLC exercised its option to lease sections 3, 8, and 10 of the airport, and now is the lessee of almost all non-runway portions of the airport. (Id.) Since "obtaining the Ground Lease, defendant [Hawthorne Airport LLC] in conjunction with [Advanced Air LLC] have operated as a fixed base operator . . .complete with a terminal, offices, a restaurant, on demand charter services, and fuel dispensing facilities." (Id. ¶ 16.) Plaintiffs allege that "[b]y being the master lease holder, [Hawthorne Airport LLC], Wehrly, and Stockton are able to exclude from the airport any business seeking to compete with the services they and [Advanced Air LLC] provide." (Id.)

In August of 2009, Hawthorne Hangar Operations was formed as a partnership between Wolfe and Wehrly to purchase the former headquarters of Northrop Corporation, which is a property adjacent to the airport. (Id. ¶¶ 17-19.) The Northrop parcel included two existing 15,000-gallon underground fuel tanks that were previously used by Northrop. (Id. ¶ 18.) Hawthorne Hangar Operations purchased

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | March 12, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

the Northrop property on November 16, 2009. (Id. ¶¶ 19, 24.) At the time, a "Through-the-Fence agreement between plaintiff Hawthorne Hangar Operations and the City became effective, which allowed aircraft visiting the airport to access plaintiff Hawthorn Hangar Operations' property." (Id. ¶ 17.) According to Plaintiffs, "Wehrly's motivation to purchase the Northrop parcel" with Wolfe was to "control the only remaining airport property that was not owned by the City and not subject to the . . . master lease." (Id. ¶ 18.)

According to Plaintiffs, "Wehrly further sought to preserve [the monopoly allegedly granted to him by the City] through the insertion in the Purchase/Sale Agreement [for the Northrop property] restrictive covenants which sought to limit Wolfe's ability to sell fuel to the general public," and that the defendants have "since sought to enforce these restrictions against [Plaintiffs]." (Id.) The Purchase/Sale Agreement includes provision 10.4, which is a fueling restriction on the Northrop property. (Id. ¶ 24.) Wolfe allegedly objected to the fuel restriction, but it was included in the final Purchase/Sale Agreement. (Id. ¶ 22.)

In 2014, Wolfe bought out Wehrly's interest in the Northrop property because Wehrly "refused to proceed with renovating the fuel facility." (Id. ¶ 24.) Wehrly allegedly "agreed to be bought out, but insisted that the section 10.4 fueling restriction in the Northrop [Purchase/Sale Agreement] be made part of the buyout agreement." (Id. ¶ 25.) According to Plaintiffs, "[t]he insistence on the fueling restriction was intended solely to shield the defendants from competing fuel sales by Plaintiffs." (Id.) After the 2014 buyout, Wolfe expended $1.2 million to bring the fuel farm operational." (Id. ¶ 26.)

On January 29, 2019, Wolfe allegedly "requested a lease from the City for section 8, which is contiguous" with the Hawthorne Hangar Operations' parcel. (Id. ¶ 34.) The City denied Wolfe a lease on section 8 because Hawthorne Airport LLC already "had a lease on that section" pursuant to the 2005 Master Lease Agreement and 2007 option. (Id.) Plaintiffs allege that as a result of the City's lease to plaintiff Hawthorne Airport LLC, Wolfe has been "unable to expand his aviation operations and has been adversely affected by the constructive exclusive right given to [Hawthorne Airport LLC]." (Id.)

On August 6, 2020, counsel for Wehrly allegedly "sent a letter to the City of Hawthorne and to [Hawthorn Hangar Operations L.P.] demanding that [Hawthorne Hangar Operations L.P.] cease and desist from selling fuel to the general public due to an interim arbitration award that Wehrly obtained in a contract action, finding that [a fuel restriction included in the purchase and sale agreement for the Northrop property] was valid and enforceable." (Id. ¶ 32.) In response, the City, on September 16, 2020, ordered Hawthorne Hangar Operations to "cease dispensing fuel on airport property," and that "such fueling must take place only on Hawthorn Hangar Operations' property." (Id.) Plaintiffs have allegedly "refused to comply with the City's illegal directive." (Id.)

Plaintiffs allege a single cause of action against the City. Plaintiffs allege that the 2005 Master Ground Lease and the 2007 option exercised by Hawthorne Airport LLC to lease sections 3, 8, and 10 violate 15 U.S.C. § 2 as an unlawful attempt to monopolize fuel sales and airport services. (See Compl. ¶ 44 (Plaintiffs "allege that the master lease between the City and [Hawthorne Airport LLC] together

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | March 12, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

with the option for sections 3, 8, and 10 grants to [Hawthorne Airport LLC] a de facto monopoly over all airport operations.").

The City now moves to dismiss Plaintiffs' claim against it pursuant to Federal Rule of Civil Procedure 12(b)(6). The City argues Plaintiffs' claim against the City is barred by the statute of limitations.

**II.    Legal Standard**

For purposes of a Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs in federal court are generally required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | March 12, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

**III.    Analysis**

The City argues Plaintiffs' antitrust claim is barred by the statute of limitations. Plaintiffs' antitrust claim against the City, which is brought under the Sherman Act, is subject to a four year statute of limitations. See 15 U.S.C. § 15(b). Under "controlling Supreme Court and Ninth Circuit authority, Plaintiffs' antitrust claim[] began to accrue at the time of injury." In re Animation Workers Antitrust Litig., 87 F. Supp. 3d 1195, 1207 (N.D. Cal. 2015). As the Supreme Court stated in Zenith Radio Corp. v. Hazeltine Research Inc.,

> Generally, [an antitrust cause] of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business . . . . This much is plain from the treble-damage statute itself. . . . [E]ach time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act.

401 U.S. 321, 338 (1971); see also Beneficial Standard Life Insurance Co. v. Madariaga, 851 F.2d 271, 274-75 (9th Cir. 1988) ("In other actions governed by 15 U.S.C. § 15b, the plaintiff's knowledge is generally irrelevant to accrual, which is determined according to the date on which injury occurs.") "Simply put, both the Ninth Circuit and U.S. Supreme Court have long assumed as a basic principle of antitrust law that antitrust claims accrue at the time of injury." In re Animation, 87 F. Supp. 3d at 1209.

The City argues Plaintiffs' Sherman Act claim against the City is time barred because Plaintiffs' claims are based on the 2005 Master Lease Agreement and 2007 option exercised by Hawthorne Airport LLC to lease the remaining sections available at the airport. (Mot. at 10.) The City argues that as of 2009, when Plaintiffs entered into the Purchase/Sale Agreement for the Northrop property, Plaintiffs had knowledge of and were harmed by the Master Lease Agreement and 2007 option. Thus, the City argues that the statute of limitations on Plaintiffs' claims began to run, at the latest, in 2009 and Plaintiffs' claims should have therefore been brought prior to 2014.

Plaintiffs argue they were not harmed until 2019 when they requested and were denied the lease on the section 8 parcel, and that therefore the statute of limitations on the Sherman Act claim did not begin to run until 2019. (Opp. at 2.) In addition, Plaintiffs argue that the "continuing violation" doctrine applies, and that the "last violation in time alleged in the Complaint as to the City was the rejection of plaintiff Wolfe's request for a lease on the section 8 parcel in 2019. (Id. at 3-4.)

The Court finds that the statute of limitations on Plaintiffs' claim against the City is time barred. While Plaintiffs allege they were not harmed until 2019 when they requested and were denied the lease on the section 8 parcel, the allegations in Plaintiffs' Complaint state otherwise. Plaintiffs' Complaint shows Plaintiffs were injured in 2009 when Plaintiffs entered into the Purchase/Sale Agreement for the Northrop property. Plaintiffs' allege that they entered into the Northrop Purchase/Sale Agreement as Northrop was the "only remaining airport property that was not . . . subject to the master lease." (See

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | March 12, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

Compl. ¶ 18.) In addition, Plaintiffs' allege that Wehrly's motivation in entering into the agreement with Plaintiffs was to continue Wehrly's and the other defendants' monopoly and control over the airport property, which was granted to them by the City in the 2005 Master Lease Agreement and option to lease the remaining airport parcels. (Id.) Wehrly "further sought to preserve his monopoly through the insertion in the Purchase/Sale Agreement of restrictive covenants which sought to limit Wolfe's ability to sell fuel to the general public." (Id.) Plaintiffs were eventually forced to buy out Wehrly's interest in the Northrop property because Wehrly refused to develop the fuel facility and destroy the alleged monopoly granted to him by the City. All of these acts were a direct result of the 2005 Master Lease Agreement and injured Plaintiffs in 2009. Thus, Plaintiffs' claims against the City for the 2005 Master Agreement and 2007 option accrued in 2014, and Plaintiffs did not bring their claims against the City until six years later in 2020.

This case is similar to Ryan v. Microsoft Corp., 14-cv-04634, 2015 WL 1738352 (N.D. Cal. Apr. 10, 2015). In Ryan, Microsoft allegedly entered into a restricted hiring agreement in May of 2007 in which Microsoft and other technology companies agreed not to pursue manager level and above candidates in an attempt to "suppress[] the compensation and mobility of [its] employees." Id. at * 2. Several employees brought a Sherman Act claim against Microsoft in 2014. Id. at *12. The Court found the plaintiffs' claims were barred by the statute of limitations and began to accrue in 2007 when the plaintiffs worked for Microsoft and the hiring agreement was entered into. Id. The Court rejected the plaintiffs' argument that the statute of limitations on their Sherman Act claim did not begin until 2013, when the plaintiffs became aware of the 2007 agreement when they tried to find a new job. The Court found the fact that the plaintiffs "did not 'know for certain' whether or to what extent they had been damaged prior to May of 2013,' does not show [the plaintiffs] would not have been able to allege the fact of damages at the time Microsoft allegedly entered into the anticompetitive agreements." Id. Similarly here, Plaintiffs were damaged by the 2005 Master Agreement and 2007 option in 2009 when Wolfe entered into the Purchase/Sale Agreement with Wehrly. Plaintiffs could have alleged an antitrust injury related to the Master Agreement at this time but did not. Thus, Plaintiffs' claims accrued in 2009.

In addition, the City's denial of Plaintiffs' request to lease the section 8 parcel does not constitute a "continuing violation." Under the "continuing violations" doctrine, "each overt act that is part of the [antitrust] violation and that injures the plaintiff . . . starts the statutory period running again." Klehr, 521 U.S. at 189; Pace Indus. v. Three Phoenix Co., 813 F.3d 234, 237 (9th Cir. 1987) ("A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured."). In the Ninth Circuit, an overt act restarts the statute of limitations if it: (1) "is a new and independent act that is not merely a reaffirmation of a previous act,"; and (2) "inflict[s] new and accumulating injury on the plaintiff." Pace, 813 F.3d at 237. "The effect of a continuing violation is to restart the statute of limitations." Airweld, Inc. v. Airco, Inc., 742 F.3d 1184, 1190 (9th Cir. 1984).

Here, the City's denial of Plaintiffs' request to lease the section 8 parcel is not a new and independent act. Rather, the City's denial of Plaintiffs' request was simply a reaffirmation of a previous act – namely that the City had already leased the section 8 parcel to defendant Hawthorne Airport LLC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | March 12, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

Thus, the City's reaffirmation that the section 8 parcel was already leased does not constitute a continuing act that would continue the four year statute of limitations.

### Conclusion

For the reasons stated above, the Court grants the City's Motion to Dismiss and finds that Plaintiffs' Sherman Act claim against the City is barred by the four year statute of limitations. Because the Court finds that any further amendment would be futile, the Court grants the City's Motion to Dismiss with prejudice. Del Toro v. Centene Corp., 19-cv-05136, 2020 WL 6081738, at *5 (N.D. Cal. Oct. 14, 2020) ("Dismissal with prejudice is warranted when allowing amendment would be futile."); Datt v. Wells Fargo Bank, N.A., 19-cv-01216, 2019 WL 5722384, at *4 (N.D. Cal. Nov. 5, 2019) ("[B]ecause the FCRA claim is time-barred, amendment would be futile.").

IT IS SO ORDERED.