UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10744 PA (ASx) | Date | April 27, 2021 |
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

Present: The Honorable    PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

| K. Sali-Suleyman | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

On January 21, 2021 defendants Hawthorne Airport, LLC, Advanced Air, LLC, David Wehrly, and Levi Stockton ("Defendants") filed a Motion to Dismiss. (Dkt. No. 29 ("Mot.").) Plaintiffs Hawthorn Hangar Operations, L.P., and Dan Wolfe ("Plaintiffs") filed an Opposition (Dkt. No. 33) and Defendants filed a Reply (Dkt. No. 37.) Plaintiffs filed a Request to Strike Defendants' Reply (Dkt. No. 40) and Defendants filed a Request to Strike Plaintiffs' Request (Dkt. No. 41).

On February 26, 2021, the Court provided notice to the parties that it was converting Defendants' Motion to Dismiss into a Rule 56 Summary Judgment Motion on the issue of whether Plaintiffs' antitrust claims are barred by the statute of limitations. (Dkt. No. 47.) In its Order, the Court noted that several of the documents attached to the parties' Motion to Dismiss, Opposition, and Reply were not proper documents for judicial notice, and included facts that the Court could not rely on in deciding a Rule 12(b)(6) motion. (Id.) The Court further noted that, pursuant to Federal Rule of Civil Procedure 12(d), a Court may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. (Id. citing Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or Rule 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.")).

The Court provided Plaintiffs with an opportunity to file a supplemental opposition by March 12, 2021, and for Defendants to file a reply by March 19, 2021. (Id.) On March 12, 2021, Plaintiffs filed their Opposition. (Dkt. No. 54 ("Pl.'s Supp. Opp.").) On March 19, 2021, Defendants filed their Reply. (Dkt. No. 58 ("Def.'s Supp. Reply").) Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument.

**I.    Background**

Plaintiffs brought this case against Defendants and the City of Hawthorne[1], alleging Defendants "conspired among themselves to restrain interstate commerce at the Hawthorne Municipal Airport," and

---

[1] The Court granted the City of Hawthorne's Motion to Dismiss without leave to amend on March 12, 2021. (Dkt. No. 55.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 20-10744 PA (ASx) | Date | April 27, 2021 |
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

that "[w]ith the complicity of the City, [Defendants] have acquired a de facto monopoly over all ground leases and aviation services at the airport." (Dkt. No. 1 ("Compl.") ¶ 1.) Plaintiffs allege Defendants have "attempted to prevent Plaintiffs from engaging in competing fuel sales at the airport." (Id. ¶ 10.)

As alleged in Plaintiffs' Complaint, in 2005, "the City of Hawthorne entered into a master ground lease with [d]efendant Hawthorn Airport, LLC for thirty-five years with two . . . renewal options for sections 1, 2, 4, 5, 6, 7, 9, and 11." (Id. ¶ 14.) Hawthorne Airport LLC was also "given the option to lease the remaining sections 3, 8, and 10." (Id.) Hawthorne Airport LLC "exercised the option to lease sections 3, 8, and 10 and has therefore acquired from the City a constructive exclusive right [over] the entire aircraft non movement area of the airport." (Id.) Plaintiffs allege that "by being the master lease holder, [Hawthorne Airport LLC,] Wehrly, and Stockton are able to exclude from the airport any business seeking to compete with the services they and [ defendant Advanced Air, LLC] provide." (Id.)

As alleged in Plaintiffs' Complaint, in 2009, plaintiff Wolfe and defendant Wehrly, entered into a Purchase/Sale Agreement to "purchased the former Northrop headquarters property adjacent to the airport." (Id. ¶ 17.) "The Northrop parcel included a large hangar and two existing 15,000 gallon underground fuel tanks that were previously used by Northrop to fuel its aircraft." (Id. ¶18.)

According to Plaintiffs, defendant Wehrly "sought to preserve his monopoly through the insertion in the Purchase/Sale Agreement [of] restrictive covenants which sought to limit Wolfe's ability to sell fuel to the general public." (Id.) "In August of 2009 Hawthorne Hangar Operations L.P. was formed as a partnership between Wehrly and Wolfe to purchase the Northrop property." (Id. ¶ 19.) Section 10.4 of the Purchase/Sale Agreement contains a fuel restriction stating "Buyer covenants and agrees that Buyer shall not use the fuel tanks located on the Real Property for any purpose other than fueling and refueling of (i) airplanes, helicopters and other equipment owned or directly managed by Buyer . . . ."

"In 2014, [plaintiff] Wolfe sought to buy out [defendant] Wehrly's partnership interest in [Hawthorne Hangar Operations L.P.] . . . because Wehrly refused to proceed with the renovation of the fuel facility." (Id. ¶ 25.) Wehrly allegedly agreed to be bought out, but insisted that the fueling restriction be made part of the buyout agreement, which Wolfe refused. (Id.) In order to avoid a "forced sale, a compromise was reached where a provision was inserted into the buyout agreement" in which Wolfe allegedly "simply acknowledge[d] that [the fueling restriction]" was part of the Purchase/Sale Agreement. (Id.) "After the 2014 buyout, Wolfe expended $1.2 million to make the fuel farm operational." (Id. ¶ 26.)

According to Plaintiffs, Defendants allegedly continued their conspiracy to restrain fuel competition by erecting a fence that was "intended to obstruct and hinder [Hawthorne Hangar Operations L.P.'s'] fueling operations." (Id. 28.) According to the undisputed facts submitted by the parties in their supplemental briefing, in 2009 there was a fence located between the Hawthorne Hangar Airport Property and Defendant/ Hawthorne Airport, LLC's leasehold just north of the Hawthorne Hangar Airport property. (Def.'s Supp. Reply at 1, Decl. of L. Stockton at ¶¶ 11-13.) The pre-existing fence was a "chain link" type fence with "slats and support poles that were cemented into the ground."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | April 27, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

(Id. ¶ 5.) In 2016, this pre-existing fence was removed by Plaintiffs. (Id.; see also Pls.' Supp. Opp., Decl. of Dan Wolfe at ¶ 7 (Plaintiffs "removed" "open-corral areas" because Plaintiffs "didn't need any outdoor fenced-in area for storage," and removal was "approved without [Plaintiffs'] fuel farm refurbishment project." "Building a tall unnecessary fence with no openings in its entire length formed a three sided very dangerous trap."). Defendant Hawthorne Airport LLC demanded that Plaintiffs replace the pre-existing fence. On April 28, 2017, after Plaintiffs did not put up a new fence, Defendant Hawthorne Airport LLC put up a new fence. (Def.'s Supp. Reply, Decl. of L. Stockton ¶ 28.)

In their Complaint, Plaintiffs bring claims for: (1) violation of 15 U.S.C. section 1, conspiracy to restrain interstate commerce (fuel sales), (2) violation of 15 U.S.C. section 2, for unlawful attempt to monopolize fuel sales and airport services, (3) declaratory relief that section 10.4 (the fuel restriction section of the Purchase/Sale Agreement) is void by operation of California Business & Professions Code Section 16600, and (4) nuisance and abatement. Defendants now ask the Court to find on summary judgment that Plaintiffs' Sherman Act claims (claims 1 and 2) are barred by the statute of limitations.

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). The moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence, or by any other form of admissible evidence. See Celotex, 477 U.S. at 322. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325. The facts are construed "in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Importantly, a "mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment.'" Fazio v. City & County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252).

## III. Discussion

In their original Motion to Dismiss, Defendants argued in part that the statute of limitations has run on Plaintiffs' Sherman Act claims because all of the alleged antitrust acts occurred more than four years ago. In particular, Defendants argued Plaintiffs' Sherman Act claims began to run in 2009 when Plaintiffs and Defendants entered into the Purchase/Sale Agreement which contained a restrictive covenant on Plaintiffs' fuel sales. According to Defendants, it was at this time that any alleged injury to Plaintiffs' potential fuel sales operations occurred.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | April 27, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

    In response, Plaintiffs argue that the statute of limitations did not begin to run until February of 2017. Plaintiffs argue they were not injured in 2009 because they did not intend to sell fuel on their property in 2009, and that under the accrual exception they were not injured until 2017 when they decided they wanted to sell fuel on their property. (Dkt. No. 54, Pls. Opp. to Motion to Dismiss at 5.)

    In addition, Plaintiffs argue that under the continuing violation doctrine, the April 2017 erection of the fence blocking Plaintiffs' property constitutes a continuing violation which kept the statute of limitations from running. (Dkt. No. 54 at 2.) According to Plaintiffs, this fence was part of Defendants' continuing effort to prevent Plaintiffs from competing with Defendants' fuel sales.

    **A.    Sherman Act Statute of Limitations**

    Plaintiffs' claims under the Sherman Act are subject to a four year statute of limitations. See 15 U.S.C. § 15(b). The statute of limitations begins to run "when a defendant commits an act that injures a plaintiff's business." Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 338 (1971); see also In re Animation Workers Antitrust Litig., 87 F. Supp. 3d 1195, 1209 (N.D. Cal. Apr. 3, 2015) ("[B]oth the Ninth Circuit and U.S. Supreme Court have long assumed as a basic principle of antitrust law that antitrust claims accrue at the time of injury.") "[T]he plaintiff's knowledge is generally irrelevant to accrual." Beneficial Standard Life Insurance Co. v. Madariaga, 851 F.2d 271, 274-75 (9th Cir. 1988).

    **1.    <u>When Plaintiffs' Sherman Act Claims Accrued</u>**

    In their supplemental Opposition, Plaintiffs argue that the "accrual exception" applies to their Sherman Act claims, and that under this exception, the statute of limitations did not begin to run until February 14, 2017. A plaintiff's Sherman Act claim begins to accrue on "the date on which injury occurs." <u>In re Animation Workers Antitrust Litig.</u>, 87 F. Supp. 3d at 1209.

    According to Plaintiffs, February of 2017 is when Plaintiffs first decided they wanted to sell fuel on their property and this is when Defendants first attempted to assert the restrictive covenant that injured Plaintiffs. (Dkt. No. 54 at 5.) Plaintiffs argue they had "no intention of engaging in competing fuel sales at the time of the [2009 Purchase/Sale Agreement]." Instead, "[a]ll that [plaintiff] Wolfe wanted to do at the time was to be able to fuel his own aircraft." (Id.) However, "due to the cost of restoring the fueling facility, [plaintiff] Wolfe changed his mind and decided to operate a fueling [facility] as a means of recovering these costs." (Id.) According to Plaintiffs, "it was only then, that Wolfe decided to enter the market and was adversely impacted by the . . . restrictive covenant." (Id.)

    As the Court previously found, "Plaintiffs were injured in 2009 when Plaintiffs entered into the Purchase/Sale Agreement for the Northrop Property." (<u>See</u> Dkt. No. 55 at 4.) As the Court previously stated, Plaintiffs' allege that defendant Wehrly's motivation in entering into the agreement with Plaintiffs was to continue Wehrly's and the other defendants' monopoly and control over the airport property, which was granted to them by the City in the 2005 Master Lease Agreement and option to lease the remaining airport parcels. (Id.) Wehrly "further sought to preserve his monopoly through the insertion in the 2009 Purchase/Sale Agreement of restrictive covenants which sought to limit Wolfe's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | April 27, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

ability to sell fuel to the general public." (Id.) Plaintiffs were eventually forced to buy out Wehrly's interest in the Northrop property because Wehrly refused to develop the fuel facility and destroy the alleged monopoly granted to him by the City. Because an antitrust claim accrues "when a defendant commits an act that injured a plaintiff's business," Plaintiffs' antitrust claims against Defendants accrued in 2009 when Defendants committed the act of injuring Plaintiffs' potential fuel business by inserting the fuel restriction in the 2009 Purchase/Sale Agreement.

While Plaintiffs argue in their supplemental Opposition that Wolfe did not intend to sell fuel on his property until 2017 and therefore was not injured until 2017, the evidence submitted in support of this Motion directly contradicts Plaintiffs' argument. For example, in April of 2017, plaintiff Dan Wolfe sent an email to Levi Stockton stating he intended to sell fuel on the property in 2009, but thought it would be easier to challenge the fuel restriction after the Purchase/Sale Agreement was finalized. (See Def.'s Supp. Reply Ex. C ("They fraudulently inserted a bogus fabricated covenant (10.4) into our original purchase agreement. . . . At the time, just before closing, I didn't want to take the chance of screwing up the purchase. I also believed that it would be easy later to prove the wrong doing. . . . To counter the bogus, deceitful actions by Hoonie and David, BEFORE I put my money into escrow to close the sale, I presented Davis with a Partnership Agreement clearly outlining our shared ([Hawthorne Hangar Operation's]) intentions to sell fuel to 'outside tenants, invitees and visitors.'"))

Because there is no genuine dispute that Plaintiffs were injured in 2009, the Court finds as a matter of law that Plaintiffs' Sherman Act claims accrued in 2009. Thus, absent some other exception, the statute of limitations on Plaintiffs' Sherman Act claims expired four years later in 2013.

### B.     Continuing Violation Exception

Plaintiffs next argue that a new fence erected in 2017 constitutes a "continuing violation" that continued the statute of limitations for Plaintiffs' antitrust claims. Under the "continuing violations" doctrine, "each overt act that is part of the [antitrust] violation and that injures the plaintiff . . . starts the statutory period running again." Klehr, 521 U.S. at 189; Pace Indus. v. Three Phoenix Co., 813 F.3d 234, 237 (9th Cir. 1987) ("A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured."). In the Ninth Circuit, an overt act restarts the statute of limitations if it: (1) "is a new and independent act that is not merely a reaffirmation of a previous act,"; and (2) "inflict[s] new and accumulating injury on the plaintiff." Pace, 813 F.3d at 237. "The effect of a continuing violation is to restart the statute of limitations." Airweld, Inc. v. Airco, Inc., 742 F.3d 1184, 1190 (9th Cir. 1984).

The undisputed facts show that in 2009 there was a fence located on the property where Plaintiffs allege a new fence was constructed. (Def.'s Supp. Reply at 1, Decl. of L. Stockton at ¶¶ 11-13.) The pre-existing fence was a "chain link" type fence with slats and support poles that were cemented into the ground." (Id. ¶ 5.) In 2016, this pre-existing fence was removed by Plaintiffs. (Id.; see also Plaintiffs' Supp. Opp., Decl. of Dan Wolfe at ¶ 7 (Plaintiffs "removed" "open-corral areas" because Plaintiffs "didn't need any outdoor fenced-in area for storage," and removal was "approved without [Plaintiffs'] fuel farm refurbishment project.") Thus, the fence erected in 2017 was not a new and independent act,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-10744 PA (ASx) | Date | April 27, 2021 |
|---|---|---|---|
| Title | Hawthorne Hangar Operations, L.P., et al. v. Hawthorne Airport, LLC, et al. | | |

but was rather a reaffirmation of a previous act - namely replacing a fence Plaintiffs had previously taken down.

In their Opposition, Plaintiffs argue that the "fences that [Hawthorne Hangar Operations] removed were not security fences." (Pl.'s Supp. Opp., Decl. of Dan Wolfe at ¶ 7.) Dan Wolfe's declaration states that there was "never, at least while [Hawthorne Hangar Operations] has been in existence, been an Airport Boundary Security Fence." However, the issue is not whether there was an "Airport Boundary Security Fence." The issue is whether there existed prior to 2017 a fence similar to the one Defendants erected in 2017. Based on the undisputed facts, the answer to that question is yes, there was a fence similar to the one Defendants erected, but it was removed by Plaintiffs in 2016.

The Court finds as a matter of law that the continuing violations exception does not apply to Plaintiffs' Sherman Act claims, because the fence erected in 2017 was not a new and independent act, and did not inflict a new and independent accumulating injury on Plaintiffs. The fence was simply erected to replace a fence that Plaintiffs earlier had taken down. Because the statute of limitations began to run on Plaintiffs' Sherman Act claims in 2009, and the continuing violations exception does not apply to Plaintiffs' Sherman Act claims, the Court finds as a matter of law that the statute of limitations on Plaintiffs' Sherman Act claims ran in 2013. Thus, Plaintiffs' Sherman Act claims brought against Defendants in 2020 are barred by the statute of limitations.

## Conclusion

For the foregoing reasons, the Court finds as a matter of law that Plaintiffs' Sherman Act claims are barred by the statute of limitations. Plaintiffs' Sherman Act claims are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims for (1) declaratory relief that section 10.4 is void, and (2) nuisance and abatement. See 28 U.S.C. § 1367(c) (A federal court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction.") Plaintiffs' claims for (1) declaratory relief and (2) nuisance and abatement are dismissed without prejudice. Defendants' Petition to Compel Arbitration of the Third Cause of Action of the Complaint (Dkt. No. 32) is denied as moot. The Court will issue a judgment consistent with this Order.

IT IS SO ORDERED.