Ernest J. Franceschi, Jr. (State Bar No. 112893)
FRANCESCHI LAW CORPORATION
4640 Admiralty Way, 5th Floor
Marina del Rey, California 90292
Telephone: (213) 622-0835
Facsimile: (213) 622-0837
Email: ejf@franceschilaw.com

Attorneys for Plaintiffs
HAWTHORNE HANGER OPERATIONS, L.P.
and DAN WOLFE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HAWTHORNE HANGAR OPERATIONS, L.P. a California limited partnership; DAN WOLFE an individual,<br><br>               Plaintiffs,<br><br>    vs.<br><br>HAWTHORNE AIRPORT, LLC., a Delaware limited liability company; ADVANCED AIR, LLC., a California limited liability company; DAVID WEHRLY, an individual; LEVI STOCKTON, an individual, The CITY OF HAWTHORNE, a municipal corporation.<br><br>               Defendants. | **CASE NO. 2:20-cv-10744-PA-AS**<br>Assigned to Hon. Percy Anderson<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS HAWTHORNE AIRPORT, LLC., ADVANCED AIR, LLC, DAVID WEHRLY AND LEVI STOCKTON'S MOTION FOR ATTORNEY FEES; DECLARATION OF ERNEST J. FRANCESCHI, JR.; EXHIBITS<br><br>[Served Concurrently with Declarations of Patrick Carey and Dan Wolfe]<br><br>DATE:  June 14, 2021<br>TIME:   1:30 p.m.<br>PLACE:  Courtroom 9A |

COME NOW Plaintiffs HAWTHORNE HANGAR OPERATIONS, L.P. and DAN WOLFE and submit the following Opposition to the Motion for Attorney Fees filed by Defendants HAWTHORNE Airport, LLC (hereinafter HA), Advanced Air, LLC (hereinafter AA), David Wehrly (hereinafter Wehrly), and Levi Stockton:

I.    **PREFACE**

On April 27, 2021 this Court issued an Order granting summary judgment in favor of the Hawthorne Airport, LLC, Advanced Air, LLC., David Wehrly, and Levi Stockton on the basis that Plaintiff's Sherman antitrust claims were barred by the statute of limitations. [Dkt. No. 59] The Court converted Defendants' motion to dismiss to a motion for summary judgment on the issue of the statute of limitations only. [Dkt. No. 47].

Although the motion to dismiss raised a plethora of issues other than the antitrust statute of limitations, those issues were either implicitly rejected or not ruled upon and related to the state law supplemental jurisdiction claims asserted in the third and fourth causes of action. All of the state law claims were dismissed without prejudice and with leave to refile in state court because the merits of those claims were never reached here. Despite the fact these claims were never adjudicated, this motion is inexplicably almost entirely based upon the bringing of these supplemental state law claims over which this Court has declined to exercise jurisdiction.

This motion is also based in large part upon matters having nothing to do with antitrust statute of limitations, such as an irrelevant arbitration decision which is not even final and is presently the subject of state court motions to either vacate or confirm the award.

This motion is also based upon a personal exchange between counsel that took place after the antitrust action was filed and has nothing to do with substantive merits of the case. The Court previously sanctioned Plaintiff's Counsel for his ill advised choice of words in dealing with Defense Counsel. Plaintiffs' Counsel apologized and promptly paid the sanctions. Nevertheless, Defense Counsel now seeks what amounts to a double sanction for the same transgression. This suggests that this motion has been filed for an improper purpose and is intended to seek retribution.

The Court's ruling on the statute of limitations is narrow and based upon two findings.  First, the Court determined that Plaintiffs sustained damage in 2009, and concluded that this is when the antitrust claims accrued.  The second basis pertains to the "continuing violation exception." The Court determined that the erection of a fence by the Defendants in 2017 was "similar to the one Defendants erected, but was removed by Plaintiffs in 2016." [Dkt. No.59 pgs 5-6].  Therefore the erection of the fence by Defendants was a "reaffirmation of a previous act-namely replacing a fence Plaintiffs had previously taken down." *Id.*

Defendants have now filed a motion for attorney fees against Plaintiff's Counsel pursuant to 28 U.S.C. section 1927 for allegedly "multiplying the proceedings unreasonably and vexatiously" as well as the Court's inherent authority. [Doc. No. 63].  However, Defendants do not explain how the proceedings have been "multiplied," let alone "vexatiously and unreasonably." The proceedings herein are comprised of the filing of a Complaint by Plaintiffs, the filing of a motion to dismiss which was converted to an MSJ, and the briefing on the motion.  There is no multiplication of proceedings.  This is a streamlined and straightforward as a litigation can be.  This motion has no basis in law or fact and appears to be itself a violation of 28 U.S.C. section 1927 by multiplying the proceedings unnecessarily and out of a desire to exact retribution for having brought the action.

## II.    HISTORICAL FACTS PERTAINING TO THE SUBJECT FENCE

This Court is by now very familiar with the facts upon which this litigation was based and Plaintiff will dispense with a reiteration of the operative facts. However, what will be discussed here is the factual basis for the assertion that the erection of the fence by Defendants in 2017 was "continuing violation."

As discussed in the Declaration of Patrick Carey who became the chief pilot for Grumman Aerospace, a subsidiary of  Northrop Grumman in 1994 and was intimately familiar with the operations at the location for what was to become the

subject premises, Northrop Corporation first built an underground fuel farm at the same location where Plaintiffs' fueling facility now exists.  However, no fueling was conducted from that location.  All fueling of aircraft was performed from a fuel truck.  The fuel truck can be seen in the photograph which is attached as *Exhibit 1* which depicts the area in or about 1998 or 1999. The fence that is seen surrounding the Northrop fuel farm in the photograph  has fixed fencing on three sides.  What appears to be a fence on the north side of the fuel farm is not a fence at all,  but a rolling gate.  The purpose of the enclosure was to secure the fuel truck after hours.

The north side of the enclosure where the rolling gate is located is the same side where the Defendants erected their fence in 2017.  Aside from the fact that there was no fence on the north side, but a rolling gate, there exists  another material distinction between what Northrop built and what Defendants erected.  The rolling gate on the north side of the fuel farm is situated squarely on what was then the Northrop Grumman ramp, which is now owned by the Plaintiffs.

The fence that Defendants erected is situated approximately three feet north of the rolling gate shown on *Exhibit 1*.  The reason for this is because when Plaintiffs restored the fuel farm, they expanded it north by approximately three feet up to the boundary line of their premises where it abuts Defendants' leasehold.  The fence Defendants put up is situated entirely on Defendants' leasehold property, not Plaintiffs' land that was formerly owned by Northrop as shown on *Exhibit 1* where the enclosure was located.

 Moreover, what defendants erected was an actual chain link fence, not a rolling gate.  Accordingly, Defendants' erection of the fence was not, nor could it have been a reaffirmation of a prior act because they erected their fence on property other than what was the Northrop Grumman ramp, at a different location, and of a completely different character (a stationary fence as opposed to a rolling gate).

It was impossible for Defendants to have simply replaced the "fence" that Plaintiffs took down, because in order for them to have done so, they would have had

to erect it three feet east of where they did, which would have required them to trespass on Plaintiffs' property.  Just as in football, this is "a game of inches" and the precise distance matters.

*Exhibit 1* was not available to Plaintiffs at the time of the summary judgment motion because it was in the photograph archives of Mr. Carey, who just recently came upon it while searching for other materials.  Mr. Carey is a tenant at the HHO facility and is not an employee of any of the Plaintiffs.  Mr. Carey as set forth in his declaration was aware of the litigation and when he discovered the archived evidence and promptly brought it to Mr. Wolfe's attention.  Unfortunately not in time for use in opposition to the summary judgment motion.

The purpose for presenting this evidence is not to attempt to relitigate the Court's ruling that all Defendants did was to replace a "fence that Plaintiffs previously took down,"  but to make a factual showing necessary to support the assertion that the continuing violation exception to the statute of limitations was made in good faith and based upon solid evidentiary support.  Because Defendants have filed this motion, Plaintiffs are now required to come forward with this evidence to demonstrate that having invoked the continuing violation doctrine was not only in good faith, but factually and legally meritorious.

## III.   NO BASIS EXISTS FOR AN AWARD OF FEES AGAINST PLAINTIFF'S COUNSEL

### A.   This Motion is Intended to Circumvent the Rule 11 Procedures

Neither section 1927 or the use of the court's inherent authority to impose sanctions are intended to be vehicles that allow a party to circumvent the Rule 11 process.  What defendants take issue with (the bringing of the action itself) falls squarely within the ambit of Rule 11 because they are in essence contending that no reasonable attorney would have brought the action and that it was obvious the action

was time barred.  However, Defendants do not explain why they did not initiate the Rule 11 procedures and instead seek to rely section 1927 and the court's inherent authority.

Awards of attorney fees under both 28 U.S.C. section 1927 and the Court's inherent authority require a finding of bad faith or vexatiousness, which is materially different than Rule 11, which authorizes sanctions for attorney's signature on papers filed in cases without reasonable pre-filing inquiry and determination that the paper was well grounded and warranted by law or a good faith argument for change in the law.

Moreover, with regard to fees under 28 U.S.C. Section 1927 as well as the Court's inherent authority, the Supreme Court in *Chambers v. NASCO* (1991) 501 U.S. 32 cautioned against the reliance upon inherent powers or 28 U.S.C. section 1927 when Rule 11 is available as a means to impose appropriate sanctions. "Although a court ordinarily should rely on such rules (referring to Rule 11) when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules...the court may safely rely on its inherent power, if in its informed discretion, neither the statutes nor the rules are up to the task..." *Id.*  at 33. Defendants do not explain why they failed to bring their motion under Rule 11 or why it is inadequate as a remedy so as to compel reliance on the court's inherent authority and/or section 1927.

It thus appears that this motion against Plaintiff's Counsel serves no purpose other than to harass Plaintiffs and their counsel,  and to seek retribution for having brought this action.


B.    <u>The Standard for a Fee Award Under 28 U.S.C. section 1927 is Not Met</u>

28 U.S.C. Section 1927 is not an omnibus prevailing party attorney fee award provision.  Nevertheless, that is exactly how it is sought to be utilized by Defendants. There are three very specific requirements that must be met to trigger a fee award

under the statute.

By its plain language, in order to be subject to sanctions, a lawyer must "multiply the proceedings" "unreasonably *and* vexatiously." This is a stringent standard. There are three substantial requirements that must be met before liability may be imposed under this statute. First, there must be multiplication of the proceedings by the attorney, Second, there must be conduct that can be characterized as unreasonable and vexatious; and third there must be a resulting increase in cost of the proceedings. *Hidahl v. Gilpin County Dept of Social Services* (D. Colo. 1988) 699 F. Supp 846.

None of the requirements for an award of attorney fees against Plaintiffs' Counsel have been met. First, there has been no multiplication of the proceedings. Plaintiffs filed their Complaint, Defendants moved to dismiss under FRCP 12(b)(6), which motion the Court converted to an MSJ, and a ruling was made. Where proceedings were kept streamlined, simple and within the normal bounds of litigation, this section as a basis for imposing attorney fees is inapplicable. *Reyes v. Banco Santander de P.R., N.A.* (D. P.R. 1984) 583 F. Supp 1444, 1446.

The *Reyes* Court determined that in order to impose attorney fees under the statute, the court must find that a "losing party has been obstinate." "Thus, the winning party is not entitled to a fee award as a matter of law, unless the Court finds that said party was stubbornly litigious or that it caused unnecessary inconveniences and expenses." *Id.* at 1445.

There is nothing unusual or extraordinary about the very brief litigation of this case that would suggest anything other than an action that was litigated within the normal bounds of litigation, nor can the Defendants demonstrate any multiplication of the proceedings whatsoever that would justify a fee award over and above what the normal cost of defense would be. Section 1927 only allows for the recovery of "excess costs" against an attorney who unreasonably and vexatiously multiplies the proceedings. Defendants can point to no "excess costs" beyond those normally

required for the bringing of a dispositive motion.  Nevertheless, they unreasonably and contrary to the provisions of the very statute they rely on seek to recovery their entire attorney fees in this action.

Defendants refer to the acrimonious email exchange between counsel as evidence of vexatiousness or vindictiveness.  However, there is no evidence presented that this action was the result of such motivation.  Plaintiffs Counsel's declaration clearly avers that he has never met or had any dealings with Ms. Stockton prior to this action. Plaintiffs Counsel also has had no involvement in any of the other litigations between these parties whatsoever.  Moreover, the email exchange took place after the action had been filed and could not have been the precipitating factor in bringing this litigation.

Finally, Defendants claim the action was brought  to gain some sort of advantage in other litigations and to interfere with an arbitration award that to this date is not final and has no force or effect unless it is confirmed as a Superior Court judgment.  Defendants fail to explain how the bringing of this action was intended to accomplish what they allege, particularly since on February 1, 2021 the Superior Court entered a declaratory judgment in favor of Plaintiffs which declares section 10.4 to be unenforceable.  *Hawthorne Hangar Operations, LP. v. Hawthorne Airport, LLC., et al.* LASC Case No. BC663210

C.     There is no Basis for a Fee Award Under the Courts Inherent Authority

Defendants also base their motion on the Court's "inherent authority to sanction bad faith conduct" however, as discussed above, there is no indication of bad faith by Plaintiffs or their Counsel.

Under the court's inherent power, a court "certainly may assess [] expenses against counsel who wilfully abuse[s] judicial processes." *Roadway Express, Inc. v. Piper* (1980) 447 U.S. 752, 766.  But, "[l]ike other sanctions under its inherent powers[], the court must make an explicit finding that counsel's conduct 'constituted

or was tantamount to bad faith.'" *Primus Auto Fin. Servs., Inc. v. Batarse* (9th Cir. 1997) 115 F. 3d 644, 648; *Roadway Express,* at 767.

A finding of bad faith is warranted only where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for purposes of harassing an opponent." *Id.* at 649; see also *In re Itel Sec. Litig.* (9th Cir. 1986) 791 F. 2d 672, 675 (sanctions appropriate for counsel's conduct meant to extract fee concessions in separate litigation).  There was no frivolous argument or bad faith conduct here. The issue of when the statute of limitations accrued presented a bonafide dispute, particularly in light of the continuing course of anti competitive actions engaged in by defendants during the time frame at issue.

The court disagreed with Plaintiffs and made a determination in favor of the Defendants that the statute of limitations had expired.  Simply because one side loses a dispute does not mean there was bad faith in bringing or defending the action.

Accordingly, there is no basis for an award of fees under the court's inherent authority.

## IV.   CONCLUSION

In every litigation there will be a winner and a loser.  Just because a party loses does not automatically subject its counsel to an award of attorney fees.  Moreover, there was a substantial and meritorious factual basis for having brought this action. For all of the foregoing reason, this motion should be denied in its entirety.

Dated: May 24, 2021                 **FRANCESCHI LAW CORPORATION**


By  /s/Ernest J. Franceschi, Jr.
Ernest J. Franceschi, Jr.
Attorney for Plaintiffs
HAWTHORNE HANGER OPERATIONS, L.P.
and DAN WOLFE

## DECLARATION OF ERNEST J. FRANCESCHI, JR.

I, ERNEST J. FRANCESCHI, JR. hereby declare:

1.     I am an attorney at law duly admitted to practice before this Court and I am counsel for the Plaintiffs in the within action.

2.     I have never before met any of the lawyers that represent Defendants in this action, and with the exception of L.R. 7-3 conferences, I have never before spoken with Defense Counsel Ms. Stockton.  Other than those L.R. 7-3 conferences, I have never spoken with any counsel that represents any of the moving Defendants herein.

3.     I have never been counsel for any party in any of the state court litigations nor nor have I been involved in any manner with other litigations between the parties herein.

4.     I do not have any personal animus toward any of the Defense Counsel, or their clients and this action was brought after a thorough investigation of the facts and the applicable law.  I believed when I filed this action that it had substantial merit, and still believe that to be true.

5     There is also no basis in fact for the claim that I brought this action to obstruct an  arbitration award that I had no involvement with, and which I am informed and believe is not even final and is presently the subject of cross motions in the Superior Court to either vacate or confirm the award.   Under California law, an arbitration award has no legal force and effect until such time as it is confirmed by a court and becomes a judgment.  Moreover, I have reviewed the judgment in *Hawthorne Hangar Operations, LP. v. Hawthorne Airport, LLC., et al.* LASC Case No. BC663210 where the Court entered a declaratory judgment decreeing that section 10.4 of the PIPA (previously discussed in the motion papers) is unenforceable.  The arbitration award appears to be at odds with the Declaratory Judgment, which does not bode well for the prospect of the arbitration award being confirmed.   The foregoing notwithstanding, the arbitration award played no role in the decision to file this federal antitrust action.

6.     Finally, at the time of the summary judgment briefing neither my clients or I had the evidence manifested by *Exhibit 1* which shows the original enclosure for the fuel farm built by the Northrop Corporation as it existed in 1988-1989 when that archived photograph was taken. This newly discovered evidence was in the possession of Patrick Cary who brought it to Mr. Wolfe's attention after the Court's ruling on summary judgment and after the 14 day time period to move for reconsideration.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and if called upon as a witness, that I could and would testify competently to all of the foregoing.

Executed this 24th day of May, 2021 at Marina del Rey, California.


/s/ Ernest J. Franceschi, Jr.
Ernest J. Franceschi, Jr.